**Doc DUTTON, Plaintiff,**

v.

**Doris SCHWARTZ, individually and as Guardian ad litem on behalf of her minor daughter Brenda Schwartz, Defendant.**

**No. CV–81–50–BU.**

United States District Court,
D. Montana,
Butte Division.

May 28, 1982.

John Leslie Hamner, Butte, Mont., for plaintiff.

Edward G. Beaudette, Knight, Dahood, McLean & Everett, Anaconda, Mont., for defendant.

HATFIELD, District Judge.

### I. *Factual Summary*:

This case is on appeal from judgment of the Bankruptcy Court awarding appellee $3,470.58, pursuant to Rule 801, Bankruptcy Rules.

Plaintiff mother acquired judgment in state court for $2,000.00 on a promissory note, and attorneys' fees were adjudged. She also acquired quasi-contractual judgment in the second count for $1470.58. The minor daughter acquired tort judgment in the second count for $1,000.00 general damages and $1,000.00 punitive damages awarded to the daughter only.

Defendant's petition for bankruptcy was opposed by plaintiff under 11 U.S.C. § 523(a)(6), alleging the claims were for willful or malicious injury. In the adversary complaint, the note was included ($3,470.58 asked). An amended complaint asking $5,470.58 was filed. The Bankruptcy Judge, however, apparently ruled on the original complaint, awarding $3470.58 to survive discharge, and awarding attorney fees. Appellant Doc Dutton appeals from this award, and states that the latter award of attorneys' fees is unclear as to whether the fees were on the state debt judgment or ancillary to the adversary cause.

Appellee claims that in July of 1977, Doc Dutton committed sexual assault and battery on the minor daughter, resulting in her pregnancy. Her parents and the Granite County Attorney confronted the appellant and negotiated an agreement under which he was to pay appellee $3,000.00 for release from liability.

Appellant allegedly paid appellee only $1,000.00, but refused to pay the balance. As a result, her family instituted a civil suit for damages arising from the sexual assault and battery. On July 1, 1980, the state court entered judgment against Doc Dutton for $5,470.58. The judgment included the balance of the debt owing on the promissory note, special damages, general damages, punitive damages, attorneys' fees and costs.

In assessing punitive damages against the defendant, the state district judge stated:

That the actions of the defendant Doc Dutton in this case were and are willful and wanton without justification and constitute malicious action as such term is defined by the laws of the State of Montana . . . .

Proceedings in execution of this judgment were stayed on September 2, 1980, by the filing of appellant's petition in bankruptcy. This adversary proceeding followed. Upon the court's finding the debt nondischargeable and the awarding of attorneys' fees, the defendant filed a motion for a new trial which was summarily denied. This appeal to the Federal District Court followed.

II. *Issues*:

A. *Dischargeability of the Debt.*

Plaintiff claims that the state court judgment is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(6), which states:

11 U.S.C. § 523, EXCEPTIONS TO DISCHARGE:

(a) A discharge under §§ 727, 1141 or 1328(6) of this Title does not discharge an individual from any debt. . . .

(b) For wilful and malicious injury by the debtor to another entity or to the property of another entity;

The critical issue becomes, according to appellees, the debt was the result of willful and malicious injury, and not which theory was used as a basis for recovery of the judgment. In *Rivera v. Moore McCormack Lines, Inc.,* 238 F.Supp. 233 (S.D.N.Y.1965), an action arose out of a seaman's contractual duty to perform his duty in a proper and workmanlike manner. The court stated:

Clearly the form of the judgment itself does not control and resort may be had to the entire record to determine dischargeability. *Greenfield v. Tuccillo,* 129 F.2d 854 (2nd Cir. 1942). An act may be merely negligent to predicate civil liability, or it may be the result of wilfulness and malice. This is an issue to be resolved before dischargeability is determined, and the theory of recovery—tort or contract—is immaterial.

*Rivera,* 238 F.Supp. at 234.

The rule for determining the willful and malicious character of an injury is stated as follows:

The words "wilful and malicious" . . . only mandate that the questioned act be done "deliberately and intentionally" in knowing disregard of the rights of another.

*Matter of Barton,* 465 F.Supp. 918, 924 (S.D.N.Y.1979).

To aid in this determination of nondischargeability, federal courts have looked to the judgment rendered by the state court to see if the state court determined that the injury necessitated punitive damages because of its willful and malicious nature. *National Homes Corp. v. Lester Industries, Inc.,* 336 F.Supp. 644 (W.D.Va.1972). As stated before, the state district court found the defendant's acts "willful and wanton and without justification and awarded $1,000.00 as punitive damages to appellee (minor daughter).

Appellant argues that the tort and contract claims are found to be willful and malicious, prompting an award of punitive damages to the daughter, and that the contract claim arising from the execution of the promissory note was a separate event.

Decisions holding liabilities formally grounded in contract dischargeable by force of § 17(a)(8) have involved recognizable torts such as are regularly deemed comprehended within the section. *Matter of Barton,* 465 F.Supp. at 924. The fact that a contract breach is an "independent willful tort" under state law can be an alternative ground to deny discharge. *Nat'l Homes Corp.,* 336 F.Supp. at 647. In *Western Surety Co. v. Rich,* 141 F.Supp. 872 (W.D. Okl.1956), a surety's claim against its bankruptcy principal, although emanating from the suretyship contract, was nondischargeable as the surety had paid a judgment for assault and battery by the bankrupt.

█ Because the entire state court judgment arises from the sexual assault and subsequent action, the contract and tort claims cannot be separated. The state court has already found appellant's actions to be "willful and malicious", justifying a

finding of nondischargeability of the debt. This court also feels that any other result would be unfair and unjust, allowing the defendant to avoid responsibility for malicious injury by filing bankruptcy.

B. *Sufficiency of Evidence as to Nondischargeability.*

Appellant argues that respondent presented copies of the state court judgment as the only evidence, along with appellant's testimony denying the malicious and willful act, presented to the Bankruptcy Court.

Notice of entry of judgment has not yet been served, so the state court judgment is not yet final. Appellant argues therefore that the evidence was insufficient to support the Bankruptcy Court's conclusion.

Appellant further argues that the doctrines of res judicata and collateral estoppel are inapplicable to dischargeability questions. *In Re Eskenazi*, 6 B.R. 366, 368. According to the *Eskenazi* court:

Under both the old and new [Bankruptcy] Acts, Congress has endowed the bankruptcy courts with exclusive jurisdiction to handle dischargeability questions arising from the factual situations set forth in the cited sections. . . .

[I]n this Circuit, that question has been addressed on a number of occasions and the rule which has uniformly been applied would permit a bankruptcy court to entertain additional evidence on factual questions already answered by non-bankruptcy tribunals. . . .

*Id.* at 369.

Appellant argues that only the daughter's claim of $1,000.00 general damages might survive discharge in bankruptcy under § 523(a)(6) *only* if the state judgment were final.

Appellant also throws in an argument that the court must assume, because the mother and daughter didn't testify at the trial, that Doc Dutton didn't commit the assault. He further argues that the $1,000.00 punitive damages do not really constitute a "debt" as defined by § 523(a)(6), which exempts "any debt . . . for willful or malicious injury by the debtor", but are instead a fine or punishment.

Appellant has merely shown that the appellate courts have disagreed in their interpretations of dicta from a U. S. Supreme Court opinion. The disparate opinions have arisen from a footnote in *Brown v. Felsen*, 442 U.S. 127, 129, 139 (n.10), 99 S.Ct. 2205, 2208, 2213 (n.10), 60 L.Ed.2d 767 (1979), a case in which the doctrine of res judicata was held not applicable in determining issues in bankruptcy. In the footnote, the Supreme Court differentiates res judicata and collateral estoppel, and states that if, "in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court."

The Bankruptcy court based its conclusion of law No. 5, which reads:

That defendant/debtor Doc Dutton is collaterally estopped from relitigating the issues determined by the District Court's judgment in Granite County Cause No. 5081.

on several authorities. In *In Re Charles Frank Willis*, 2 B.R. 566 (1980) the bankruptcy court determined the dischargeability of a debt arising out of a judgment finding that the debtor's action in causing an auto collision was willful and malicious. The bankruptcy court held that it was collaterally estopped from relitigating in bankruptcy those issues already decided in the prior suit. In *National Homes Corp. v. Lester Industries, Inc.*, 336 F.Supp. 644, 668 (1972), it was held that a Bankruptcy court is precluded from making any other determination of willfulness or maliciousness when a trial court has made an entry of judgment of these issues.

The *In Re Eskenazi* language quoted by appellant, *supra*, goes on to read that the state court "acted quite properly in entertaining evidence beyond the record of the Texas case, and that he could weigh that evidence against the prior record to make

his own determination of the dischargeability question. 6 B.R. at 369. The Ninth Circuit has followed this rule in *In Re Houtman,* 568 F.2d 651 (9th Cir. 1978) where the debtor tried to have the Bankruptcy Court discharge a debt arising from compensatory and punitive damages on a fraud and misrepresentation judgment in district court.

In this pre-*Brown v. Felsen* case, the 9th Circuit said:

> As we read these amendments, there is no room for the application of technical collateral estoppel in determining the nondischargeability of debts.... This does not mean that the [state court] documents may not be considered by the Bankruptcy Judge as establishing the nondischargeability. What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings.... 568 F.2d at 653–659.

Appellees assert that the *Houtman* rationale applies here because Doc Dutton's testimony as to his innocence was the same as in state court; and that the Bankruptcy Judge considered his testimony and chose not to find the state court judgment unreliable. Therefore, the Bankruptcy court determination could not be "clearly erroneous," and will therefore not be disturbed by this court.

Appellees point out that appellant merely tried to create an issue out of the fact that notice of entry of judgment was sent out by the attorneys and not the Clerk of Court. The cases require entry of judgment sent by the Clerk *only* for purposes of determining the time for filing appeal. A judgment becomes a lien on defendant as soon as the court enters it in the judgment book. "The entry of judgment is the act of the clerk, but when entered becomes the judgment of the Court." *Hynes v. Barnes,* 30 Mont. 25, 75 P. 523.

■ The judgment was entered in the court decrees book on July 1, 1980, and appellant was notified. For the purposes of this order, the judgment of the state court is considered final.

### C. *Award of Attorneys' Fees.*

■ Appellant claims that the award of attorneys' fees cannot be nondischargeable. He attempts to separate each individual and each claim into different categories and concluded that the Bankruptcy Court cannot award attorneys' fees because there was no hearing in State District Court.

Appellees argue that the Bankruptcy Judge is working well within his powers by requesting an affidavit from an attorney as to attorneys' fees to be awarded, in order to determine a reasonable fee.

11 U.S.C. § 105 reads: "(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provision of this title."

Appellant cites *In Re Allen and Settlemire,* 4 B.R. 618 to support his claim that the law firm must have filed its own complaint in opposition to appellant's discharge to save the fees claim. Appellees claim that appellant has attempted to mislead the court by not giving the full citation:

> For the same reason the debt owing to the plaintiff as attorney fee is within the exception, and is dischargeable in bankruptcy.

The quote goes on to read:

> The judgment in State Court directed the defendant to pay the designated sum directly to the attorney, clearly a debt assigned to another entity. *Id.* at 620.

The case therefore concerns an assignment of a debt, and does not apply to the present situation.

Appellant counters that the state court adjudged fees as costs connected with collection of the promissory note, alleged in count one of the complaint. The state court assessed no punitive damages in connection with count one.

Appellant argues that there is no authority under state law for the state court to assess fees in the tort claim or quasi-contract claim, so the Bankruptcy court should have no greater power. He claims that although appellees cite 11 U.S.C. § 105 delineating general broad powers of the Bank-

ruptcy court to issue orders and judgments, the court has no power to assess attorneys' fees as costs or damages absent contractual or statutory authority. He claims that the Rule in Bankruptcy cases is stated at 9 Am.Jur.2d 328, Bankruptcy § 630:

> Petitioning creditors in an involuntary case, creditors who recovered property for the estate, creditors prosecuting a criminal offense relating to the bankruptcy case or to the business or property of the debtor, and creditors who make a "substantial contribution" in a reorganization or municipal adjustment case are entitled under the 1978 Bankruptcy Code ... not to compensate, but to actual and necessary expense; ...

Appellant again fails to complete the quote, which goes on to read:

> [A]nd they are also entitled to have their attorney or accountant compensated or reimbursed with respect to the matter that has entitled the creditor to an administrative expense allowance.

§ 503 of the 1978 Code allows administrative expenses, including reasonable compensation for professional services rendered by an attorney, but only in five specific instances. Appellant argues that none apply to the present case. 11 U.S.C. § 503(b)(3)(A) through (E).

11 U.S.C. § 523(d) allows attorneys' fees to a debtor who defeats a creditor's objection to discharge, but only under 11 U.S.C. § 523(a)(2). This case was determined under § 523(a)(6) instead, which provides an exception to dischargeability "for willful and malicious injury by the debtor...."

Because this court has previously held that the entire state court judgment, including costs and attorneys' fees, arose from the willful and malicious injury to the debtor, the § 523(a)(6) exception to dischargeability will apply.

IT IS THEREFORE ORDERED and this does order that the appeal from the decision of the Bankruptcy Court be and the same is hereby dismissed.